UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLIENT NETWORK SERVICES, INC.,<br>702 King Farm Boulevard<br>2nd Floor<br>Rockville, MD  20850,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>SMALL BUSINESS ADMINISTRATION,<br>409 Third Street, S.W.<br>Washington, D.C.  20416<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

For its Complaint against Defendant United States of America, acting through its agent, the Small Business Administration, Plaintiff Client Network Services, Inc. ("CNSI"), by counsel, states as follows:

### NATURE OF THIS ACTION

1. Plaintiff CNSI respectfully seeks declaratory relief reversing the decision of the Small Business Administration ("SBA") that CNSI is other than a small business and, therefore, ineligible for award of a task order under RFQ No. DE-RQ28-04RW12297.

2. The SBA's decision is arbitrary, capricious, an abuse of discretion, and not in accordance with law and regulation.  As an initial matter, the SBA had no authority to issue a size determination in this case.  Furthermore, even if the SBA did have such authority, CNSI qualifies as a small business.

## PARTIES

3.      Plaintiff is a corporation organized under the laws of Maryland with its principal place of business located in Rockville, Maryland.

4.      Defendant, United States, acting through the SBA, issued the decision that is the subject of this action.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this case pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-706.

6.      Venue is appropriate in this district court pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## FACTS

### The Department of Energy Procurement

7.      Pursuant to Request for Quote ("RFQ") No. DE-RQ28-04RW12297 (the "RFQ"), the Department of Energy ("DOE") sought proposals from offerors to provide information technology support services for the Office of Civilian Radioactive Waste Management ("OCRWM") communications network at the DOE's Office of Repository Development. The RFQ was issued on August 6, 2004, with proposals due by August 24, 2004.

8.      DOE limited competition for the RFQ to offerors who held contracts under General Service Administration ("GSA") Federal Supply Schedule ("FSS") for providing services of that nature. Under the FSS program, GSA awards qualifying offerors indefinite delivery contracts for providing specific goods or services at stated prices for given periods of time. Agencies acquire the goods or services by issuing orders against the contractor's FSS contract. Rules for issuing orders against FSS contracts are set forth in Federal Acquisition

Regulation ("FAR") Subpart 8.4.  48 C.F.R. Subpart 8.4.  Such orders are exempt from a number of rules applicable to federal contracting including those providing preferential treatment to small or small disadvantaged businesses.  48 C.F.R. § 8.404 (exempting FSS orders from FAR regulations concerning small businesses).

9.   CNSI holds a contract under GSA FSS #70.  CNSI submitted a fully compliant proposal in response to RFQ No. DE-RQ28-04RW12297.  DOE competitively evaluated proposals from multiple offerors and selected CNSI for award on September 24, 2004.

### The SBA Size Protest

10.   On October 1, 2004, Catapult Technologies, Inc. ("Catapult"), a disappointed offeror on the RFQ, filed a protest alleging that CNSI does not qualify as a small business.

11.   Catapult alleged that the RFQ had been issued as a small business set-aside, the SBA should assign a North American Industrial Classification System ("NAICS") restricting the RFQ to offerors with less than $21 million in average annual revenues, and that CNSI would not qualify if such a restriction was imposed.

12.   Catapult brought its protest even though the RFQ did not: (1) state that only small businesses would be considered for award, (2) contain a NAICS code identifying an applicable size standard, (3) include a requirement that offeror's certify their size, or (4) incorporate any required Federal Acquisition Regulation ("FAR") small business provisions or clauses.

13.   Catapult had not protested, or even raised with the agency, the fact that the RFQ did not contain the formal requirements for a small business set-aside, prior to submitting its own proposal.

14.   Catapult based its protest solely on phrase contained in an email that the DOE used to distribute the RFQ to the selected offerors.  This email stated in part: "Your firm has

been selected to participate in a competitive 8(a) award for IT Support Services for the U.S. Department of Energy, Office of Civilian Radioactive Waste Management in Las Vegas, Nevada. Attached is the Request for Quote . . . "

15. Pursuant to SBA regulations, Catapult's protest was referred to the SBA's Philadelphia Area Office. In accordance with the regulations, CNSI submitted financial documentation to the Area Office, including a copy of its GSA Schedule contract and financial information.

16. Although the Area Office recognized that "the contracting officer in the instant case did not include any language [in the RFQ] that indicated that this procurement is set aside for only small businesses", it nonetheless found that the email inviting offerors to bid on the procurement contained the phrase "competitive 8(a) award" which, "implies that this procurement was set aside for small business." Size Determination at 5. The Area Office further reasoned that "[c]onsequently, whether DOE actually stated that the procurement was set aside for small business or a competitive 8(a) award" was immaterial. *Id.*

17. The Area Office then assigned NAICS code 541513, Computer Facilities Management to the RFQ. This NAICS code has a size standard of $21 million. The Area Office held, contrary to the SBA's governing regulations, that the relevant time for determining CNSI's size status was the date upon which it submitted its proposal in response to the RFQ rather than the date upon which CNSI certified its status under its FSS contract. As a result, the Area Office erroneously concluded that CNSI did not qualify as small.

## The SBA Lacked Jurisdiction Over The RFQ

18.     The SBA has authority to render size determinations for procurements issued under small business programs. Current SBA regulations govern the applicability of size determinations:

> What procurement programs are subject to size determinations?
>
> The requirements set forth in Secs. 121.401 through 121.413 cover all procurement programs for which status as a small business is required or advantageous, including the small business set-aside program, SBA's Certificate of Competency program, SBA's 8(a) Business Development program, the Small Business Subcontracting program authorized under Section 8(d) of the Small Business Act, the Federal Small Disadvantaged Business (SDB) programs, the HUBZone program, and the Very Small Business (VSB) program.

13 C.F.R. § 121.401. This version of the regulation became effective June 21, 2004.

19.     The scope of this regulation does not extend to any and all manner of procurements, but only to certain procurement programs under which small business size status is required or advantageous. Indeed, SBA size determinations are <u>only</u> effective with respect to eligibility for procurements or assistance specifically "<u>authorized by the Small Business Act or Small Business Investment Act of 1958 ("SBIA")</u>." 13 C.F.R. § 121.1009(g) (emphasis added).

20.     Pursuant to the authority of the Small Business Act, the Government operates a number of "procurement programs" designed to increase awards to small business. These programs are identified in the FAR. *See* 48 C.F.R. Subpart 19.5 (set aside for small business); Subpart 19.6 (Certificates of Competency); Subpart 19.7 (Small Business Subcontracting Program); Subpart 19.8 (8a Program); Subpart 19.9 (Very Small Business Pilot Program); Subpart 19.10 (Small Business Competitiveness Demonstration Program). Size determinations are relevant for participation in these programs.

21.     The RFQ in this case was not issued under or subject to any program authorized by the Small Business Act or Small Business Investment Act of 1958 ("SBIA").

22.     In particular, the RFQ was not a small business set-aside. The RFQ contained none of the clauses mandated by law and regulation to be included in small business set-asides.

23.     For example, the Small Business Act prohibits the award of a contract pursuant to a set-aside unless the winning offeror agrees to limitations on subcontracting. 15 U.S.C. § 644(o). This obligation can only be implemented through the inclusion of the appropriate FAR clause in the solicitation. See 48 C.F.R. § 19.811-3(e). No such limitation was included in the RFQ.

24.     The Area Office was also mistaken in asserting jurisdiction over the RFQ because the rules applicable to small business awards -- including those involving size protests -- do not apply to the award of orders under GSA schedule contracts.

25.     FAR Part 19 implements the Small Business Act and covers "the respective roles of executive agencies and the Small Business Administration (SBA) in implementing [small business] programs." 48 C.F.R. § 19.0000(a)(2). However, FAR § 8.404(a) specifically provides that the regulations and requirements contained in Part 19 "do not apply to orders placed against Federal Supply Schedules." 48 C.F.R. § 8.404(a). Similarly, FAR § 38.101(e) provides that the requirements contained in Part 19 "do not apply to orders . . . placed under resulting schedule contracts." 48 C.F.R. § 38.101(e).

### The SBA Erroneously Calculated CNSI's Size From the Date It Submitted Its Proposal Rather Than From the Date It Certified Its Size Under Its FSS Contract

26.     CNSI submitted its initial small business self-certification in connection with its GSA FSS #70 contract on May 2, 1997.

27.     At the request of the GSA Contracting Officer, CNSI submitted an offer to extend the contract on November 28, 2001. CNSI's offer to extend included: (1) an Updated

Commercial Sales Practices chart; (2) Point of Contact Information for Industrial Funding Fee; (3) Updated Representations (including a new small business certification); (4) a copy of its current Schedule Pricelist and a copy of its proposed new Schedule Pricelist; and (5) statements of price reduction and commercial sales practices charts from its vendors.

28.     Based upon these submissions, GSA extended the contract. CNSI's November 28, 2001 certification was the only size certification executed by CNSI in connection with the extension of its FSS contract.

29.     The SBA ignored both CNSI's original size certification and the certification submitted in connection with its extension of its FSS contract. Instead, the SBA determined that CNSI's mere submission of an offer in response to the RFQ was, in effect, a new certification of size and its size would be measured as of that date.

30.     However, contrary to the SBA's decision, current SBA regulations indicate that an offeror's size status is measured as of the date it certifies under its <u>underlying contract</u> not the date it competes for task orders issued to be issued against that contract:

> When does SBA determine the size status of a business concern?
>
> Generally, SBA determines the size status of a concern (including its affiliates as of the date the concern submits a written self-certification that it is small to the procuring agency as part of its initial offer (or other formal response to solicitation) which includes price.

13 C.F.R. § 121.404(a).

> A concern that qualified as a small business at the time it received a contract is considered a small business <u>throughout the life of that contract</u>. Where a concern grows to be other than small, the procuring agency may exercise options and still count the award as an award to a small business.

13 C.F.R. § 121.404(g) (emphasis added).

7

31.       In fact, in the Federal Register notice promulgating these amendments, SBA firmly rejected comments urging changes to the above rules:

> It has been the SBA's longstanding policy to allow a concern that qualified as a small business at the time it received a contract to be considered a small business throughout the life of the contract. At this time, the SBA is not addressing awards under the MAS[1] program and is not changing its policy regarding other than multiple award contracts. As such, the SBA is implementing the rule as proposed.

SBA Small Business Size regulations, Final Rule, 69 Fed.Reg. 29192, May 21, 2004, Section-by-Section Analysis of Comments, § 121.404.

32.       Had the SBA used either the date of CNSI's initial size certification issued in connection with the award of the contract or the date of CNSI's subsequent certification issued in connection with the extension of its contract, CNSI would have qualified as a small business with average annual revenues of less than $21 million.

### CNSI's Appeal To The SBA Office Of Hearings And Appeals

32.   CNSI appealed the Area Office's decision to the SBA's Office of Hearings and Appeals ("OHA") on November 4, 2004. CNSI's OHA appeal was initially assigned to Judge Blazsik. However, on January 6, 2005, counsel for CNSI was informed by a member of OHA's staff that Judge Blazsik had retired and that the appeal had been reassigned to Judge Holleman.

33.       As an OHA administrative judge, Judge Holleman has previously issued several decisions addressing the issues raised in CNSI's appeal. In these decisions, Judge Holleman has consistently determined that the SBA has jurisdiction to render size determinations in connection with the award of orders under FSS contracts and that the time for determining the size of an offeror in connection with such awards is the date the proposal for the order was submitted.

---

[1] MAS is the acronym for Multiple Award Schedule. The Terms MAS and FSS are interchangeable.

34.     OHA has not indicated when a decision on CNSI's appeal will be forthcoming. However, there is no reason to believe other than it will uphold the Area Office's decision.

35.     CNSI believes that DOE will soon take action with respect to the RFQ and that, as a result of the adverse size determination, will exclude CNSI for consideration for the award. Thus, timely review of the adverse decision is essential.

## COUNT I

(The Defendant Acted Arbitrarily, Capriciously and In Violation of Law By Upholding the Decision of the SBA Area Office)

36.     The paragraphs above are incorporated by reference as set forth herein.

37.     The decision of the Defendant is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

38.     The SBA lacked jurisdiction to render a size determination in connection with the RFQ. The RFQ contained none of the legally required elements necessary to constitute a small business set-aside and was not issued under any program authorized by the Small Business Act or SBIA. Moreover, the rules implementing the Small Business Act are not applicable to the award of task orders under FSS contracts.

39.     Even if the SBA had authority to render a size determination in this case, the SBA applied the wrong period for determining CNSI's size. Had it used the appropriate period, CNSI would have been determined to be small.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CNSI prays that judgment be entered in its favor and against Defendant as follows:

(a)     Declare that the Defendant's decision to find CNSI to be other than a small business under the RFQ at issue in this case is arbitrary, capricious, an abuse of discretion or in violation of law and regulation.

(b)     Declare CNSI to be a qualified offeror, eligible for award, for RFQ No DE-RQ28-04RW12297.

(c)     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*[signature]*

Eric J. Marcotte
D.C. Bar # 446926
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C. 20005
Phone: (202) 371-5700
Facsimile: (202) 371-5950

Counsel of Record for Plaintiff

Dated: January 24, 2005